UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X

DENISE DESTINA,

                    Plaintiff,

        -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.

--------------------------------------------------------X

**FILED**
**CLERK**

8:49 am, Oct 15, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-02382 (ADS)

**APPEARANCES:**

**Law Office of Sharmine Persaud**
*Attorney for the Plaintiff*
1105 Route 110
Farmingdale, NY 11735
      By:    Sharmine Persaud, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Megan J. Freismuth, Special Assistant United States Attorney

**SPATT, District Judge**:

On April 21, 2017, Denise Destina (the "Plaintiff" or "Destina") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that she is ineligible to receive disability insurance benefits.

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons

that follow, the Plaintiff's motion is granted in part, and the Defendant's motion is denied in its entirety.

## I. BACKGROUND

On August 19, 2013, the Plaintiff applied for disability insurance benefits under the Act, alleging that she has been disabled since December 31, 2011. The Plaintiff claims that she is disabled primarily due to impairments impacting her shoulders, specifically bilateral shoulder pain post-surgery and bilateral shoulder impingement osteoarthritis.

Her claim was initially denied on January 17, 2014, and she requested a hearing. Destina appeared with counsel before Administrative Law Judge (the "ALJ") Patrick Kilgannon on August 20, 2015 and December 17, 2015. On January 13, 2016, ALJ Lamkay issued a written decision in which he found that the Plaintiff was not disabled.

The Plaintiff sought a review by the Appeals Council and the Appeals Council denied his request. The ALJ's decision became final upon the Appeals Council's denial of the Plaintiff's request for review.

On November 9, 2017, the Plaintiff filed the instant action. The parties submitted the matter to the Court as fully briefed on March 9, 2018.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A. The Standard for Benefits Under the Act

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa,* 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

## B. The Standard of Review

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179-81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 405(g). *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial

evidence, are conclusive," *id*. (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view;" instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*." *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d

Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. 2d at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**C. Application to the Facts of this Case**

The Plaintiff contends that she is entitled to disability insurance benefits for three primary reasons: (1) the ALJ violated the treating physician rule by improperly according limited weight to the opinions of the Plaintiff's treating physician and great weight to the medical expert; (2) the ALJ improperly assessed the Plaintiff's testimony; and (3) the ALJ's residual functional capacity ("RFC") finding was based on the Vocational Expert's ("VE") response to a flawed hypothetical question.

**1. As to Whether the ALJ Violated the Treating Physician Rule**

The ALJ determined that the Plaintiff had the RFC to perform less than a full range of light work, as defined in 20 C.F.R. § 404.1567(b), "consistent with the ability to sit for six hours in an eight-hour day, stand/walk for six hours in an eight-hour day with normal breaks; lift/carry up to 20 pounds occasionally and 10 pounds frequently; with no bilateral overhead reaching; and frequent reaching, handling and fingering." R. at 23. The Plaintiff contends that the ALJ's RFC determination improperly assessed the medical evidence and the Plaintiff's testimony. The Court agrees.

RFC is defined in the regulations as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R.

Part 404 Subpt. P App. 2, § 200.00(c); *see also* 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.967; *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC as the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" (quoting SSR 96–8p)). This determination requires consideration of "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting 20 C.F.R. § 404.1545(a)). It takes into account "all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 5:07-CV-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. § 404.1545), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

Under the fourth step of the sequential evaluation process, the ALJ reviews the RFC and compares it to the demands of his past relevant work. *See* 20 C.F.R. § 404.1520(f). If the Plaintiff is still able to perform the type of activities required by his past employment, he is deemed not to be disabled. *See* 20 C.F.R. § 404.1520(e). Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by ... other substantial evidence...." 20 C.F.R. § 416.927(c)(2). When a treating source's medical opinion is not supported by substantial evidence, the opinion will not be afforded controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). The ALJ is required to explain the weight assigned to the opinion of a treating physician.

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight," so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same). Although, the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128.

The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Halloran*, 362 F.3d at 32 (same); 20 C.F.R. § 404.1527(c)(2). Failure to provide "good reasons" for not assigning the proper weight of a treating physician is grounds for remand. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran*, 362 F.3d at 32 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (quoting *Burgess*, 537 F.3d at 128); *see also Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot

substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

### A. Dr. Carter

As stated above, the ALJ must properly consider the factors cited in *Selian* in order to assign less than controlling weight to a treating physician's opinion. ALJ Kilgannon assigned "some weight" to Dr. Robert F. Carter's medical opinions primarily for three reasons: (1) Dr. Carter's medical opinions are purportedly inherently inconsistent; (2) they do not conform with Destina's conservative treatment regimen; and (3) they are not consistent with the Plaintiff's reported daily activities. All three reasons violate the regulations.

Dr. Carter is an orthopedic surgeon who treated the Plaintiff from August 2003 through the date of the initial hearing. Dr. Carter performed two surgeries on Destina, a right shoulder arthroscopic subacromial decompression in January 2006, and arthroscopy, glenohumeral debridement, subacromial depression and distal clavicle resection on the left shoulder in August 2007. According to the ALJ,

> On examination with Dr. Carter in October 2013, the claimant complained of continuing bilateral shoulder pain, and exhibited limited ranges of shoulder motion with tenderness and good strength. There was no evidence of swelling, warmth or redness and some mild atrophy. In October and December 2013, Dr. Carter assessed that the claimant had a 50% disability of the left shoulder and a 25% disability of the right shoulder and stated that she should avoid overhead lifting. At the same time, the doctor stated that the claimant was 100% disabled from work. In March 2014, on examination of the claimant, there was no swelling, atrophy, warmth or erythema, and there was good strength. Throughout treatment into January 2015, the claimant was continually advised to avoid overhead lifting, and the doctor stated that she was 100% disabled.

> In June 2015, Dr. Carter stated that the claimant had osteoarthritis of the bilateral shoulders and could life/carry no weight. She was found to be frequently able to grasp, turn and twist objects and perform fine manipulations. No reaching, including overhead was permitted. In December 2015, Dr. Carter stated that the claimant's conditions meet the requirements of Listing 1.02 and that she was only able to lift/carry less than 10 pounds and had significant limitations performing repetitive reaching, handling and fingering. Some weight is given to the multiple

opinions of Dr. Carter, however, they are inherently inconsistent in that the doctor assessed that the claimant could perform no reaching of any kind; however, in all notes of treatment, the doctor advised that the claimant was only limited in her ability to perform overhead reaching. In addition, the opinions are not consistent with the claimant's course of conservative treatment consisting of low level pain medication for bilateral shoulder pain since the alleged onset date, nor are they consistent with the claimant's reported daily activities including cooking, cleaning, caring for her personal needs, laundry and shopping.

R. at 25-26 (internal citations to the record omitted).

The ALJ erred in its discussion of Dr. Carter's opinion in numerous respects. The rationale he provided fails to consider factors that weigh in favor of assigning greater weight to Dr. Carter's medical opinion. ALJ Kilgannon did not discuss the length of the treatment relationship, which at the time of his opinion exceeded 12 years, nor did he mention that Dr. Carter is an orthopedic surgeon who performed two surgeries on Destina. He also failed to consider other portions of the record that support Dr. Carter's opinion. While the ALJ is not required to explicitly mention each of the factors or every shred of evidence in the record, the failure to consider the record as a whole, or provide "good reasons" for according lesser weight constitutes error. ALJ Kilgannon's selective citation of the record and his lack of consideration for the factors set forth in the regulations required remand.

Contrary to the ALJ's assertion, Dr. Carter's medical opinions are not inherently inconsistent when the entire record is taken into account. "Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevant evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-cv-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) (Spatt, J.) (collecting cases). While it is appropriate for the ALJ to only credit portions of a medical source opinion, or weigh different parts of the opinion differently, it is not appropriate for the ALJ to do so without providing sound reasons for the

discrepancy. *See id*; *see also Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor." (internal citations omitted)).

In the instant case, the ALJ's findings regarding the Plaintiff's ability to lift are inconsistent with Dr. Carter's progress notes and does not consider the entire record. Throughout the Plaintiff's treatment notes, Dr. Carter cautioned the Plaintiff against lifting, or advised that it be limited. While Dr. Carter specifically advised the Plaintiff to "avoid overhead lifting" on March 30, 2014, June 16, 2014, January 16, 2015 and July 30, 2015, R. at 319, 415, 417, 419, Dr. Carter provided a more general limitation to "limit lifting" on July 8, 2005, January 30, 2012, March 26, 2012, March 26, 2014. R. at 331, 333. Dr. Carter was consistent over the course of his treatment of the Plaintiff that she should limit lifting. While that instruction may have been more acute during certain visits with the Plaintiff, this comports with the overall symptomology of the Plaintiff's injuries, which fluctuated in severity over time.

However, even if Dr. Carter's treatment notes were inconsistent with his medical opinions, the ALJ inappropriately "cherry picked" the notes that supported his conclusion while ignoring those that did not. *See Shaw*, 221 F.3d at 135 (finding that the selective use of a treating physician's opinion "undermines any argument that [the physician's] opinion was so unreliable that it should not have been assigned controlling weight"). If the ALJ believed that there was a discrepancy in the physician's opinions, he should have exercised his discretion to develop the record to resolve any conflict. *See Jimenez v. Astrue*, No. 12 Civ. 3477, 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013) (noting that even though the regulations were amended to remove the provision requiring the ALJ to recontact a treating physician to resolve an ambiguity in the record, the regulations still

"contemplate the ALJ recontacting the treating physicians when 'the additional information needed is directly related to that source's medical opinion'" (internal citations omitted)). *See also Rosa*, 168 F.3d at 79-80 ("If an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." (quoting *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998))).

The ALJ did not re-contact Dr. Carter to clarify his allegedly inconsistent opinions. *See Perez*, 77 F.3d at 47. While it was within the ALJ's discretion not to rely on Dr. Carter's conclusion that the Plaintiff was not able to perform reaching of any kind, he had an affirmative responsibility to seek to resolve the inconsistencies in the medical records. ALJ Kilgannon should have contacted Dr. Carter to clarify discrepancies in his records as to the Plaintiff's reaching limitations.

The ALJ also notes in his decision that Dr. Carter's "opinions are not consistent with the claimant's course of conservative treatment, consisting of low level pain medication for bilateral shoulder pain since the alleged onset date." R. at 26. This is not a "good reason" to reject a treating physician's medical opinion. *See, e.g.*, *Morris v. Colvin*, No. 12-CV-5600, 2016 WL 7235710, at *9 (E.D.N.Y. Dec. 14, 2016). In this Circuit, the opinion of a treating physician is not "to be discounted merely because he has recommended a conservative treatment regimen." *Burgess*, 537 F.3d at 129 (citing *Shaw*, 221 F.3d at 134); *accord Holman v. Colvin*, No. 12 Civ. 5817, 2014 WL 941823, at *6 n.2 (S.D.N.Y. Mar. 11, 2014) ("The Court notes that the ALJ did erroneously rely on certain factors in evaluating Plaintiff's claim. For example, to support the conclusion that Plaintiff's condition was not as severe ... the ALJ noted that the 'medical evidence also reflects that solely conservative treatment was undertaken.'"(internal citations omitted)). Such a reason

"falls far short of the standard for contradictory evidence required to override the weight normally assigned the treating physician's opinion." *Shaw*, 221 F.3d at 134.

Moreover, the ALJ's decision misstated the Plaintiff's treatment regimen. After undergoing two surgeries on her shoulders, one in 2006 and another in 2007, the Plaintiff considered additional surgery in 2013. *See* R. at 292-93, 407. Dr. Carter also administered steroid and cortisone injections in 2010, 2011 and 2013. *See* R. at 288, 324, 335, 338, 407-08. The ALJ's findings regarding the Plaintiff's course of treatment were based on nothing more than a selective citation of the record. Therefore, the Court finds that Destina's conservative course of treatment does not establish a "good reason" to reject her treating physician's opinions.

The final proffered reason the ALJ rejected Dr. Carter's medical opinions is because his opinions were not "consistent with the claimant's reported daily activities including cooking, cleaning, caring for her personal needs, laundry and shopping." R. at 26. However, this alone is not a proper justification for departing from the treating physician rule. *See Savage v. Colvin*, No. 15-CV-5774, 2017 WL 776088, at *12 (E.D.N.Y. Feb. 28, 2017) ("Although courts have cited inconsistencies between a plaintiff's daily living and a treating physician's opinion as grounds for rejecting that decision, such inconsistencies should not be sufficient, by themselves, to discredit a treating physician's opinion, but must be considered in light of the complete record.") (collecting cases).

A plaintiff's reports of daily activities are not "good reasons" for according Dr. Carter's opinions limited weight. *See Balsamo v. Chater*, 142 F.3d 75, 81-82 ("[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals … it would be a shame to hold this endurance against him." (internal citations and quotation marks omitted)); *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (Spatt, J.) ("Indeed, it is well-settled that the performance

of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." (internal citations omitted)). ALJ Kilgannon's reliance on subjective complaints is not a substitute for more objective evidence. *See McCarty v. Astrue*, No. 5:05CV953, 2008 WL 3884357, at *6 (N.D.N.Y. Aug. 18, 2008) ("[The] reliance on Plaintiff's subjective complaints is not a valid basis for rejecting his opinion.").

This final justification for discounting Dr. Carter's opinion is not supported by substantial evidence and inadequately justified his findings. Further, as explained in greater detail in Section II.C.2, the ALJ's characterization of Destina's daily activities is an extension of his attempts to selectively cite the record to support his conclusion.

The ALJ's failure to provide a "good reason" for discounting Dr. Carter's opinion violated the treating physician rule and warrants remand. Accordingly, the Court remands the instant case for a comprehensive weighing of the regulatory factors, consideration of the entire record and to obtain clarification of the content of Dr. Carter's treatment notes.

### B.      Dr. Fuchs

The ALJ committed further error when he inappropriately gave "great weight" to the opinion of Dr. L. Fuchs, a non-examining medical expert. "Not having examined [the Plaintiff], [a non-examining medical expert's] opinion cannot constitute substantial evidence and normally may not override a treating source's opinion unless it is supported by sufficient medical evidence in the record." *Maldonado v. Comm'r of Soc. Sec.*, No. 12-CV-5297, 2014 WL 537564, at *14 (E.D.N.Y. Feb. 10, 2014). "[A medical] adviser['s] assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Minsky v. Apfel*, 65 F. Supp. 2d 124, 138 (E.D.N.Y. 1999) (Spatt, J.) (quoting *Vargas v. Sullivan*, 898 F.2d 293,

295-96 (2d Cir. 1990)). As a general rule, a non-examining medical expert who has not personally examined a claimant is afforded little weight. *See Vargas*, 898 F.2d at 295-96 (internal citations omitted). Accordingly, the ALJ's wholesale adoption of Dr. Fuchs' opinion is in violation of the treating physician rule. *See Ridge v. Berryhill*, 294 F. Supp. 3d 33, 60 (E.D.N.Y. 2018) ("The Second Circuit has indicated that, by extension of the treating physician rule, ALJs should not rely heavily on findings by consultative examiners or non-examining doctors." (citing *Selian*, 708 F.3d at 419)).

His opinion, "by itself, does not constitute evidence sufficient to override the treating physician's diagnosis." *Hidalgo v. Bowen*, 822 F.2d 294, 298 (2d Cir. 1987). The ALJ accorded Dr. Fuchs' opinion "great weight," despite the lack of an examination and its exclusive reliance on the record. His opinion contradicted the Plaintiff's treating physician, who found that the Plaintiff has greater limitations. As Dr. Fuchs' opinion is at odds with the Plaintiff's orthopedic surgeon who treated her for more than 12 years, the Court finds that the ALJ incorrectly assigned "great weight" to this medical opinion.

Further, Dr. Fuchs did not take the entire administrative record into account in his opinion. Most notably, Dr. Fuchs failed to review the Plaintiff's laboratory findings and incorporate their findings into in his opinion. When asked about a series of MRI results, he replied that an MRI "is a diagnostic test, but to me it is not as important as what the clinical physical examinations reveal[.] … [T]o me, the critical factors are the objective physical examinations reveal orthopedically and neurologically, not what the tests show." R. at 72. This failure to consider all of the medical evidence independently precludes a finding of controlling weight. "Accordingly, the ALJ's 'heavy reliance on [Dr. Fuchs'] testimony … contravened the clear guidance of SSA regulations, as [Dr. Fuchs] was a nonexamining source whose opinions are to be accorded less weight than those of

examining sources and especially treating sources.'" *Ridge*, 294 F. Supp. 3d at 61 (quoting *Brown v. Comm'r of Soc. Sec.*, No. 06-CV-3174, 2011 WL 1004696, at *4 (E.D.N.Y. Mar. 19, 2011)).

## 2. As to Whether the ALJ Properly Evaluated the Plaintiff's Credibility

The Plaintiff argues that ALJ Kilgannon failed to properly evaluate her credibility. In the Court's view, the ALJ failed to appropriately assess the Plaintiff's subjective complaints. To evaluate credibility,

> [t]he regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. Such an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence. In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony. The regulations require the ALJ to consider not only the objective medical evidence, but also:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms ...; and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205-06 (W.D.N.Y. 2005) (quoting *Murphy v. Barnhart*, No. 00 Civ. 9621, 2003 WL 470572, at *10-11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. §

404.1529(c))); *see also Wright v. Astrue*, No. 06-CV-6014, 2008 WL 620733, at *3 (E.D.N.Y.

Mar. 5, 2008) (listing the same seven factors); *Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y.

1998) ("[A] finding that the Commissioner has failed to specify the basis for his conclusions is [a]

compelling cause for remand.").

The ALJ is not required to discuss all seven factors as long as the decision "includes precise

reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ

gave to the claimant's statements and the reasons for that weight." *Felix v. Astrue*, No. 11-cv-

3697, 2012 WL 3043203, at *8 (E.D.N.Y. July 24, 2012) (citing *Snyder v. Barnhart*, 323 F. Supp.

2d 542, 546-47 & n.5 (S.D.N.Y. 2004)).

> Here, the ALJ determined that, after scrutinizing her testimony,

> [He did] not find her allegations of disability to be supported by the evidence in the record. At the hearing, the claimant stated she sustained injuries in a work related accident in 2004, for which she underwent shoulder arthroscopy. The claimant continued to work throughout this time, until she took a buyout offered by her employer after 20 years of service in December 2011. The claimant stated that thereafter, she received certification as a home health aide, but never worked in that capacity. It is noted that MRI's of the bilateral shoulders show some positive findings, and there was mention of additional future surgery on the left shoulder. However, her treatment lately has remained conservative, with the use of only low-level pain relief medications. In addition, the claimant remains able to perform a full range of daily activities including cooking, cleaning, laundry, shopping and caring for her personal needs.

R. at 27.

This explanation fails to set forth conclusions "with sufficient specificity to enable [the

Court] to decide whether [this] determination is supported by substantial evidence." *Ferraris*, 728

F.2d at 587. "Had the ALJ more seriously considered the treating physician['s] opinion in more

depth, he might have found that," *Caserto v. Barnhart*, 309 F. Supp. 2d 435, 446 (E.D.N.Y. 2004)

(Spatt, J.), the Plaintiff's allegations of disability were supported by the record.

The ALJ again found that the Plaintiff's course of treatment is conservative. As discussed in Section II.C.1.A, this determination is not supported by substantial evidence. ALJ Kilgannon's conclusion can only come from a selective reading of the record.

The ALJ further determined that the Plaintiff "remains able to perform a full range of daily activities." R. at 27. This also fails to take into account the entirety of the record. There is little to gain from the ALJ's recitation of basic activities that the Plaintiff can purportedly engage in on a daily basis because it lacks any analysis of the Plaintiff's numerous qualifying statements regarding those activities.

The source for such an opinion is a Function Report that was completed by the Plaintiff in November, 2013. In it, the Plaintiff states that she is unable to do most household chores including mopping, scrubbing pots and lifting laundry baskets. She is also incapable of doing yard work, lifting her arms above her head, exercising and doing her hair. It is difficult for her to put on a shirt or her bra while dressing and it is difficult for her to shave. Her ability to cook is limited, and while she drives, she often experiences pain from turning the wheel. With the help of her son, she is able to go food shipping. Destina regularly attends church, although she sits in a special chair during services to support her lower back, and she is able to visit the doctor on her own. As a result of her injuries, she contends that she is unable to lift and squat; her back hurts after standing for 45 minutes; her knees hurt after walking for 30 to 45 minutes; she struggles to kneel and reach; and is unable to sit for long periods of time.

While ALJ Kilgannon properly noted that Destina is capable of certain daily activities, the lack of a more detailed examination or analysis that includes the details in the Function Report is problematic. Without determining the particular nature of her daily activities, any conclusion regarding how these limitations could impact the ALJ's decision is premature. There is a

substantial difference between an occasional food-shopping trip or outing at church and standing or sitting for an eight hour workday. *See, e.g.*, *Bialek v. Astrue*, No. 11–CV–5220, 2013 WL 316165, at *4 (E.D.N.Y. Jan. 28, 2013) ("The ALJ stated that '[w]hile the claimant may very well have some degree of pain and limitation to his left leg/knee and low back, the evidence does not suggest a level of pain or limitations to preclude all work activity.' In support of this credibility determination, the ALJ pointed only to the fact that [plaintiff] handles his personal needs and drives independently to appointments. … Although daily activities are a relevant consideration, [plaintiff's] ability to tend to his personal needs and travel to appointments is not indicative of his ability to perform light work. Thus, this was an improper basis for discounting [plaintiff's] subjective complaints." (internal citations omitted)). The ALJ's failure to examine "the rigor of plaintiff's daily activities and presump[tion] that those activities demonstrated a lack of disability, [constitutes] legal error." *Archambault v. Astrue*, No. 09 Civ. 6363, 2010 WL 5829378, at *30 (S.D.N.Y. Dec. 13, 2010) (internal citations omitted), *report & rec. adopted*, 2011 WL 649665 (S.D.N.Y. Feb. 17, 2011).

Furthermore, the ALJ did not clarify any details of the Plaintiff's daily activities during either hearing. *Hankerson v. Harris*, 636 F.2d 893, 895-96 (2d Cir. 1980) ("it was particularly important that the ALJ explored these symptoms with plaintiff so that the ALJ could effectively exercise his discretion to evaluate the credibility [of the plaintiff to] arrive at an independent judgment … regarding the true extent of the [plaintiff's daily activities]" (internal citations and quotation marks omitted)). In fact, he did not ask *a single question* about her daily activities in either hearing. Without any kind of examination, the ALJ never gathered the particulars of Detina's activities and could not credit or ignore her potential limitations. If the ALJ had any reservations about the Plaintiff's daily activities or symptoms, he could have easily resolved them

during the hearing. By wholly ignoring the qualifications the Plaintiff placed on her ability to engage in daily activities, the ALJ's conclusion could not constitute substantial evidence.

The Court also notes, "[a] claimant need not be an invalid to be found disabled." *Williams*, 859 F.2d at 260. If the Plaintiff "gamely chooses to endure pain in order to pursue important goals … it would be a shame to hold this endurance against [her] in determining benefits unless [her] conduct truly showed that [she] is capable of working." *Balsamo*, 142 F.3d at 81-82.

Finally, the ALJ's reliance on Destina's work history is misplaced. The Plaintiff testified in the hearing that although she was injured in 2004, she continued to work until the end of 2011, when her employer offered her a buyout to retire. R. at 45-46. She worked for 20 years at the same job for the same employer. *Id*. "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (citing *Singletary v. Sec. of Health, Ed, and Welfare*, 623 F.2d 217, 219 (2d Cir. 1980)).

 Accordingly, the Court holds that the ALJ's findings regarding the Plaintiff's subjective complaints are not supported by substantial evidence.

### III. CONCLUSION

For the reasons stated above, the Court  denies the Defendant's motion for judgment on the pleadings and grants the Plaintiff's motion in part. The Court remands this case for further proceedings consistent with this opinion. Specifically, the ALJ shall: (1) re-contact the Plaintiff's treating physician and obtain clarification on his treatment notes; (2) consider the opinion of the Plaintiff's treating physician and give controlling weight to that opinion if it is based on medical evidence and not inconsistent with other substantial evidence in the record; (3)  if the ALJ declines to assign the Plaintiff's treating physician's opinion controlling weight, provide a clear and explicit

statement of what affirmative weight, if any, he affords that opinion and provide a clear and explicit statement of the "good reasons" for the weight given to the opinion in accordance with the regulatory factors listed in 20 C.F.R. § 404.1527(d); (4) further explore the Plaintiff's daily activities before determining if her allegations of disability are supported; and (5) obtain new VE testimony that is based on a hypothetical question consistent with the revised record.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

October 15, 2018

_____*/s/ Arthur D. Spatt*_____

ARTHUR D. SPATT

United States District Judge